# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **PENNYMAC LOAN SERVICES, LLC,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | |
| } | **Case No.: 2:24-cv-00635-RDP** |
| **BRAZIE J. BROWN et al.,** } | |
| } | |
| **Defendants.** } | |
| } | |
| } | |
| } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant USAA Federal Savings Bank's ("USAA") Motion to Dismiss (Doc. # 7) and Motion to Dismiss Crossclaim. (Doc. # 26). The motions have been fully briefed (Docs. # 7, 13, 15; 26, 33, 37) and are ripe for review. For the reasons explained below, USAA's Motion to Dismiss (Doc. # 7) and Motion to Dismiss Crossclaim (Doc. # 26) are due to be denied without prejudice to allow for an opportunity to conduct jurisdictional discovery.

**I.     Background**

   **A. Relevant Facts**

Plaintiff Pennymac Loan Services, LLC ("Pennymac") brought this action against Defendants Brazie J. Brown ("Brown"), Synovus Bank ("Synovus"), and USAA on May 20, 2024. (Doc. # 1). Following the Complaint, on August 1, 2024, Synovus filed its Answer, which includes a crossclaim against USAA. (Doc. # 18).

On November 29, 2016, Brown executed a note and mortgage, obtaining a mortgage loan secured by property located in Kimberly, Alabama. (Doc. # 1 ¶ 7). Pennymac is the holder of the note and the assignee of the mortgage. (*Id.*). The mortgage secures the repayment of the note,

prepayment charges and late charges due under the note, and all sums due under the mortgage and expressly requires Brown to pay all of those amounts. (*Id.* ¶ 8). Brown insured the property with a homeowner's policy from American Strategic Insurance Corporation ("Progressive") and as the mortgagee, Pennymac is a loss payee on the policy. (*Id.* ¶ 9).

On November 17, 2019, Brown's property sustained significant fire damage. (*Id.* ¶ 10). The following day, Brown advised Pennymac of the loss and reported a claim to Progressive. (*Id*). Progressive initially advised Pennymac that it planned to investigate the cause of the loss and the amount covered under the homeowner's policy. (*Id.* ¶ 12). A few months later, Progressive completed its investigation and told Pennymac that it would issue an insurance claim check at an unspecified later time. (*Id.*).

On July 23, 2020, Progressive allegedly issued the claim check, which was made payable to "Brazie Brown AND Pennymac Loan Services, LLC ISAOA" for $267,285.30. (*Id.* ¶ 13). Pennymac alleges that the mortgage provided that Pennymac "shall have the right to hold such insurance proceeds" and the right to apply those insurance proceeds to either the restoration and repair of the property or the sums secured by the mortgage. (*Id.* ¶ 11). Pennymac further contends that Progressive sent the check to Brown but neither Progressive nor Brown notified Pennymac that the check had been issued. (*Id.*). Pennymac alleges that Brown failed to send the check to Pennymac and that, instead, on July 27, 2020, Brown endorsed the check and presented it to USAA for deposit with only his endorsement. (*Id.* ¶ 14). Following this, USAA allegedly presented the partially endorsed check to Synovus, who issued payment to USAA, who then deposited the funds into Brown's USAA bank account. (*Id.*).

On August 13, 2020, Pennymac's insurance vendor called Brown to see when he would send the claim check to Pennymac. (*Id.* ¶ 15). Pennymac alleges that Brown "falsely stated that

[]he would send the check to Pennymac and retain a contractor to repair the [p]roperty when []he returned home from military duties." (*Id.*). That same day, Pennymac allegedly sent instructions to Brown explaining that he was required to endorse and send the claim check to Pennymac and requested that he provide documents relating to the repair or restoration of the property. (*Id.* ¶ 16). According to Pennymac, Brown never sent the claim check, the insurance proceeds from the claim check, or any of the requested documents related to the repair or restoration of the property. (*Id.*).

Pennymac alleges that it "did not discover until recently that the claim check had been issued or that Brown had deposited the check without Pennymac's endorsement." (*Id.* ¶ 17). On April 26, 2023, Pennymac's property preservation department identified that Brown's property was a vacant lot. (*Id.*). Following this, Pennymac called Progressive to inquire about the status of Brown's claim. (*Id.*). Pennymac contends it was on August 17, 2023 when it first learned that a claim check had been issued and that Brown had deposited it without Pennymac's endorsement. (*Id.*). That is the date when Progressive printed an image of the check from Synovus's website and sent it to Pennymac. (*Id.*).

Pennymac alleges that Brown is currently in default on his loan and the total amount due on the loan through May 21, 2024 is $189,866.79. (*Id.* ¶ 18). The fair market value of Brown's property – which, again, is now a vacant lot – is about $20,000. (*Id.* ¶ 19). Pennymac contends that "had the check not been converted by Brown, USAA, and Synovus, Pennymac could have applied the proceeds to pay off the mortgage and would then have disbursed the remaining proceeds to Brown as provided in the Mortgage." (Doc. # 13 at 5 (citing Doc. # 1 ¶ 20)).

Pennymac has asserted eight causes of action against Defendants Brown, Synovus, and USAA. (Doc. # 1 ¶¶ 21-59). Specifically against USAA, Pennymac claims conversion, negligence, and tortious interference with contract by taking the claim check from Brown for deposit without

proper endorsement and negotiating it with Synovus. (*Id.* ¶¶ 31-38, 47-59).

In its crossclaim, Synovus asserts four causes of action against USAA: breach of warranty of entitlement to enforce, breach of warranty of no alteration, breach of warranty of authorized signature, and indemnity. (Doc. # 18 at 12-18 ¶¶ 15-40).

### B.  The Parties

Pennymac is a limited liability company with its sole member being a limited liability company that has two members, each of which is a Delaware corporation with its principal place of business in California. (*Id.* ¶ 1). Brown is an individual who is domiciled in Alabama. (*Id.* ¶ 2). Synovus is a bank chartered under the laws of Georgia with its principal place of business in Columbus, Georgia. (*Id.* ¶ 3).

USAA is a federally chartered savings association with its main office located in San Antonio, Texas. (*Id.* ¶ 4). Pursuant to federal law, the citizenship of a federally-chartered savings association is the state where it makes its home office. 12 U.S.C. § 1464(x). Thus, USAA is a citizen of Texas. USAA "serve[s] the military, veterans, and their eligible family members." (Docs. # 13 at 5 (citing https://www.usaa.com); 7 at 8). USAA's customers, like Brown, may use its online banking services and make withdrawals from USAA affiliated ATMs within the state of Alabama. (Doc. # 7 at 59, 61). USAA has been involved in 100 cases in Alabama's state courts, seven in Alabama's federal courts, and more than a thousand in Alabama's bankruptcy courts. (Doc. # 13-1 at 2).

## II.    Legal Standard

A Rule 12(b)(2) motion tests the court's exercise of personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make

out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) ("A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction."). If the plaintiff satisfies his initial burden and the defendant then challenges personal jurisdiction by submitting affidavit evidence or deposition testimony, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1268 (11th Cir. 2002); *see also Posner,* 178 F.3d at 1214 ("The plaintiff bears the burden of proving 'by affidavit the basis upon which jurisdiction may be obtained' only if the defendant challenging jurisdiction files 'affidavits in support of his position.'").

When the issue of personal jurisdiction is decided on the evidence but without a discretionary hearing, a plaintiff demonstrates the requisite "prima facie case [for] personal jurisdiction" by submitting evidence sufficient to defeat a motion made pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. *See Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1317 (11th Cir. 2006). In other words, at this juncture, the court construes a complaint's allegations as true if they are uncontroverted by affidavits or deposition testimony, *id.*, and where there are evidentiary conflicts, the court "construe[s] all reasonable inferences in favor of the plaintiff." *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC,* 199 F. App'x 738, 741 (11th Cir. 2006) (quoting *Meier,* 288 F.3d at 1269); *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

### III.     Analysis

USAA seeks to dismiss both Pennymac's claims and Synovus's crossclaims against it under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Because "courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claim[,]" *Republic*

5

*of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997), the court first addresses USAA's arguments regarding the court's personal jurisdiction. As the court discusses below, jurisdictional discovery is necessary to resolve whether this court has jurisdiction. Therefore, the court does not address USAA's 12(b)(6) arguments.

### A. Personal Jurisdiction

"A federal district court in [Alabama] may exercise personal jurisdiction over a nonresident defendant to the same extent that [an Alabama state] court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So.2d 614, 617 (Ala. 1993)); *see also* Ala. R. Civ. P. 4.2 (permitting jurisdiction over nonresident defendants on any basis "not inconsistent with the constitution of this state or the Constitution of the United States"). Thus, this court may exercise personal jurisdiction over a defendant so long as jurisdiction is consistent with federal due process principles.

The Supreme Court has recognized two types of personal jurisdiction that are consistent with these legal requirements – general jurisdiction and specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). In considering whether personal jurisdiction complies with due process, the court must consider "whether the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant

subject to general jurisdiction in a forum may be sued in that forum on all claims against it, even if the claims have no connection to the forum. *Id.* at 919. By contrast, a defendant that is only subject to specific jurisdiction may only be sued with respect to claims that arise out of, or relate to, the defendant's contacts with the forum. *Id.* at 923-24. The court addresses each type of jurisdiction below, in turn.

        **i.      General Jurisdiction**

For general jurisdiction to exist, the defendant's "affiliations with the State" must be "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 137. "A corporation's place of incorporation and its principal place of business are 'paradigm all-purpose forums.'" *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 137). USAA's home office is in San Antonio, Texas, which Pennymac, USAA, and Synovus have admitted. (Docs. # 1 ¶ 4; 7 at 7; 18 ¶ 2). Therefore, USAA is subject to general jurisdiction in Texas.

However, Pennymac and Synovus[1] argue that this matter falls under a narrow hypothetical mentioned in *Daimler AG* in which the Court envisioned an "exceptional case" where a business's "operations in a forum other than its formal place of incorporation or principal place of business are so substantial and of such a nature" as to support general jurisdiction in that forum. 571 U.S. at 139 n.19. For a court to find that general jurisdiction exists under that narrow hypothetical exception, a plaintiff must show the defendant's business activities were so extensive as to "render

---

[1] In its response to USAA's Motion to Dismiss Crossclaim, Synovus states that it "incorporates" Pennymac's arguments as to jurisdiction. (*See* Doc. # 33 at 6). Accordingly, the court cites to Pennymac's response to USAA's Motion to Dismiss (Doc. # 13), acknowledging that Synovus makes the same arguments.

the corporation at home in that State." *Id.*; *see also Carmouche*, 789 F.3d at 1203 ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business."). Pennymac and Synovus have not made such a showing.

Pennymac and Synovus argue that this court has jurisdiction because of USAA's "unique, intentional business model" which "ensures that its banking services are not tied to any specific location." (Doc. # 13 at 9-10). They point to the fact that USAA, "unlike most banks, which operate branches where their customers can do their banking . . . has virtually no member accessible brick and mortar presence anywhere." (*Id.* at 9). And, because of this, USAA "focuses on delivering its banking services through its website and mobile app, and allows its members to withdraw from their USAA bank accounts using USAA affiliated ATMs." (*Id.*). On close examination, however, this argument does not cut ice. If the court were to agree with this line of reasoning, then USAA would be subject to general jurisdiction in virtually every state because it operates nationwide. The Supreme Court specifically rejected this reasoning in *Daimler AG*. *See* 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."). Moreover, Pennymac has not shown how USAA's connections to Alabama are "'so substantial' as to make this one [of] those 'exceptional' cases in which a foreign corporation is 'at home' in a forum other than its place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1204 (citing *Daimler AG*, 571 U.S. at 139 n.20).

The court also notes that while USAA has filed (at least) two separate actions in Alabama state courts where it has admitted that it "is a corporation doing business in the State of Alabama

8

and is conducting continual and systematic business" in counties in Alabama, these admissions do not render USAA sufficiently "at home" in Alabama. (*See* Doc. # 13-3 at 2); *see also USAA Federal Savings Bank v. Humphrey et al.*, Circuit Court of Cherokee County, Alabama, 13-CV-2024-900099.00. Although USAA admitted in those two state court cases that its business is "continual and systematic," the use of these words alone does not render USAA "at home" in Alabama. As the Court held in *Daimler AG*, "the proper inquiry . . . is whether a foreign corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" 571 U.S. 118 (quoting *Goodyear*, 564 U.S. at 919). Thus, for general jurisdiction to apply, USAA's business must not be *just* continuous and systematic, but *so* continuous and systematic as to render USAA essentially at home in the state of Alabama. *See also Carmouche*, 789 F.3d at 1205 ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").

For all of these reasons, USAA is not "at home" in Alabama; therefore, it is not subject to this court's general jurisdiction. For this reason, the remaining question is whether USAA is subject to specific jurisdiction in Alabama.

        ii.        **Specific Jurisdiction**

Specific personal jurisdiction is based on the party's contacts with the forum state that are related to the cause of action. *Turner v. Regions Bank*, 770 F. Supp. 2d 1244, 1247-49 (M.D. Ala. 2011). The Eleventh Circuit follows a three-part test to determine whether specific jurisdiction over a defendant is proper. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). Under this three-part test, "[t]he plaintiff bears the burden of establishing the first two prongs." *Id.* If the plaintiff proves the first two prongs, the defendant may only avoid specific

jurisdiction by a compelling showing under the third prong. *Id.* For the first prong, the plaintiff must show his claims "arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). Under the second prong, the plaintiff must prove the nonresident defendant "purposefully availed himself of the privilege of conducting activities within the forum state." *Id.* (internal quotation marks omitted). If the plaintiff establishes the first two prongs, the burden shifts to the defendant to show "a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

USAA argues that the court lacks specific jurisdiction because Pennymac and Synovus "cannot show an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (Doc. # 7 at 8 (citing *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023)). To support its argument, USAA contends that Pennymac's claims arise from Brown's wrongdoing in converting the check, not from USAA providing banking services. (*Id.*). USAA also contends that it provides banking services in Texas, not Alabama; thus, there was no harm suffered in Alabama. (*Id.*; *see also* Doc. # 26 at 7). But, there has been no evidence presented that shows where Brown used USAA's services or whether USAA's presentment of the check to Synovus occurred in or outside of Alabama. Therefore, it is impossible for the court to discern whether Pennymac's claims arise out of USAA's contacts with Alabama.

The Eleventh Circuit allows and indeed, when warranted, favors jurisdictional discovery in certain circumstances. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Resolution of a pretrial motion that turns on findings of fact – for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) – may require some limited discovery before a meaningful ruling can be made."); *see also Majd-Pour v. Georgiana*

10

*Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) ("Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction. . . . We recognize that the district court has discretion to determine the scope of discovery.").

In order for jurisdictional discovery to be appropriate, however, there must be a genuine question of fact to be resolved. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 n.7 (11th Cir. 1982) (explaining that jurisdictional discovery is most helpful where the jurisdictional question is genuinely in dispute) (internal citations and quotations omitted). The court finds that there are genuine questions of fact to be resolved here. For example, and without limitation, it is unclear where Brown was located when he endorsed the claim check, where Brown was located when he submitted the claim check to USAA for deposit, or where Brown's USAA account was opened. Without clarity on these subjects, the court cannot discern whether Pennymac's claims and Synovus's crossclaims arise out of or relate to USAA's contacts in Alabama. Moreover, jurisdictional discovery is necessary to determine whether in relation to Pennymac's claims and Synovus's crossclaims USAA has purposefully availed itself of the privileges of conducting business in Alabama, such as how USAA advertises in Alabama, how much USAA spends in advertisements directed at Alabama, and how USAA markets in Alabama or otherwise targets the banking market in Alabama.

The court concludes that the parties must engage in jurisdictional discovery to develop an adequate record on which the court can determine whether USAA is subject to this court's jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, USAA's Motion to Dismiss (Doc. # 7) and Motion to Dismiss Crossclaim (Doc. # 26) are due to be denied without prejudice. The parties are directed to engage in jurisdictional discovery to determine whether USAA is subject to specific jurisdiction in Alabama as to both Pennymac's claims and Synovus's crossclaims. A separate order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this March 3, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE