**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PENNYMAC LOAN SERVICES, LLC,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:24-cv-00635-RDP** |
| | } | |
| **BRAZIE J. BROWN,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff PennyMac Loan Services, LLC's ("PennyMac") Motion for Default Judgment against Defendant Brazie J. Brown ("Brown"). (Doc. # 54). After careful consideration, the court concludes that PennyMac's Motion is due to be granted.

**I.      Background**

PennyMac filed its Complaint on May 20, 2024, asserting claims against Brown for breach of contract, fraud, conversion, money had and received, unjust enrichment, and declaratory judgment. (Doc. # 1). The claims arise from Brown's deposit of a $267,285.30 insurance check made payable to both Brown and PennyMac without PennyMac's endorsement or knowledge. Although Brown represented that he would send the check to PennyMac and use the proceeds to repair the property, he instead retained the funds and later abandoned the property. (*Id.* at 2-9). PennyMac seeks damages, post-judgment interest, attorney fees, and costs. (*Id.* at 11-12).

Brown was served with the Summons and Complaint via certified mail on June 27, 2024, making his deadline to serve a responsive pleading July 18, 2024. (Doc. # 12). Despite being properly served, Brown failed to answer or otherwise respond to the Complaint. (Doc. # 52). The case was then stayed after Brown filed a petition for relief under Chapter 7 of the United States

Bankruptcy Code on July 9, 2024. (Doc. # 43). PennyMac filed an adversary proceeding on October 4, 2024, and the bankruptcy court issued its Memorandum Opinion and Judgment on December 18, 2025. (Doc. # 54-1). In the adversary proceeding, the bankruptcy court determined that the amount required to pay off the loan was $203,000, awarded PennyMac $14,000 in attorney fees incurred in that proceeding, and entered a judgment making the entire $217,000 debt non-dischargeable. (*Id.*, Exs. 1-2).

The stay of this case was lifted on March 12, 2026, and the court directed the parties to file a joint status report advising how the case should proceed. (Doc. # 47). After PennyMac filed its status report, the court ordered PennyMac to move for entry of default by June 8, 2026, and for default judgment by June 15, 2026. (Doc. # 50). PennyMac timely complied. (Docs. # 51, 54).

The Clerk entered default against Brown on June 8, 2026. (Doc. # 52). PennyMac now moves for default judgment against Brown in the total amount of $237,960, consisting of the $217,000 non-dischargeable debt and $20,960 in attorney fees incurred in litigating this matter, plus post-judgment interest and court costs. (Doc. # 54).

## II.    Standard of Review

When a defendant has failed to plead or defend, a district court may enter judgment by default. Fed. R. Civ. P. 55(b)(2). However, entry of default judgment is only appropriate when there is "a sufficient basis in the pleadings for the judgment entered." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citation omitted). Under this standard, the complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face, like that of a motion to dismiss under Rule 12(b)(6). *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted).

## III.    Analysis

PennyMac seeks default judgment against Brown for (1) $217,000 in damages as determined by the bankruptcy court in the adversary proceeding; (2) $20,960 in attorney fees incurred in litigating this matter against Brown; and (3) applicable post-judgment interest and court costs, for a total of $237,960. (Doc. # 54). The court begins by addressing Brown's liability then discusses each claim for damages, in turn.

### A.    Brown's Liability

Upon default, a defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The court begins by briefly summarizing the facts established by PennyMac's Complaint before evaluating Brown's liability for each of PennyMac's claims.

PennyMac's Complaint alleges that Brown executed a Note and Mortgage on November 29, 2016, secured by real property located at 9321 Brake Cir., Kimberly, Alabama 35091. (Doc. # 1 ¶ 7). After the property sustained significant fire damage on November 17, 2019, Progressive issued an insurance claim check on July 23, 2020, payable to both Brown and PennyMac in the amount of $267,285.30. (*Id.* ¶¶ 10, 13). Brown deposited the check into his bank account without PennyMac's endorsement, and then falsely represented to PennyMac that he would send the check

when he returned home from military duties – a representation he knew to be false because he had already deposited the funds. (*Id.* ¶¶ 14-15). Brown then abandoned the property, leaving it as a vacant lot, while retaining the insurance proceeds that were contractually required to be turned over to PennyMac. (*Id.* ¶ 19).

The court now addresses Brown's liability for each of PennyMac's claims against him: (1) breach of contract, (2) fraud, (3) conversion, (4) money had and received, (5) unjust enrichment, and (6) declaratory relief.

### 1.    Breach of Contract

To establish a claim for breach of contract under Alabama law, "a plaintiff must show '(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'" *City of Gadsden v. Harbin*, 148 So. 3d 690 (Ala. 2013) (quoting *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995)).

Applying these elements to the well-pleaded facts of the Complaint, which Brown is deemed to have admitted by virtue of his default, PennyMac has established a valid contract (the Mortgage) between itself and Brown. (Doc. # 1 ¶¶ 7-8, 22-23). PennyMac performed under that contract. It advised Brown of his obligation to indorse and forward the claim check and by requesting supporting documentation regarding repair of the Property. (*Id.* ¶ 16). Brown failed to perform by declining to send the claim check to PennyMac, abandoning the Property as a vacant lot, and failing to pay the amounts secured by the Mortgage. (*Id.* ¶¶ 14, 19, 23). As a result, PennyMac has been damaged in that its security for the loan has been diminished while the amount due under the loan has continued to grow. (*Id.* ¶ 24). Accordingly, PennyMac has established Brown's liability for breach of contract.

### 2.    Fraud

Under Alabama law, "[t]he elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Saia Food Distribs. & Club, Inc. v. Sec. Link from Ameritech, Inc.*, 902 So.2d 46, 57 (Ala. 2004) (quoting *Waddell & Reed, Inc. v. United Invs. Life Ins. Co.*, 875 So.2d 1143, 1160 (Ala. 2003)).

Applying this standard, PennyMac's Complaint alleges that Brown falsely told PennyMac's insurance vendor that he would send the claim check to PennyMac upon returning from military duty, a representation of an existing fact that Brown knew to be false because he had already deposited the check into his own account. (Doc. # 1 ¶¶ 14-15). PennyMac reasonably relied on this representation by forgoing further investigation into the status of the claim check. (*Id.* ¶ 28). As a proximate result, PennyMac did not learn of the check or Brown's deposit of it until years later, by which point Progressive advised that it was too late to pursue recovery from its own bank. (*Id.* ¶¶ 17, 29). PennyMac has therefore established Brown's liability for fraud.

### 3.    Conversion

To support a claim of conversion under Alabama law, the plaintiff must establish "(1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property." *Drennen Land & Timber Co. v. Privett*, 643 So. 2d 1347, 1349 (Ala. 1994) (citing *Gray v. Liberty Nat'l Life Ins. Co.*, 623 So. 2d 1156 (Ala. 1993); *Driver v. Hice*, 618 So. 2d 129 (Ala. 1993); *Gillis v. Benefit Trust Life Ins. Co.*, 601 So. 2d 951 (Ala. 1992)). The plaintiff must also show that the defendant's conversion of the property was for his own benefit and that the plaintiff has the right to immediate

possession of the property. *Huntsville Golf Development, Inc. v. Ratcliff, Inc.*, 646 So. 2d 1334, 1336 (Ala. 1994).

Applying this standard, and considering that the plaintiff must also show that the defendant's conversion was for the defendant's own benefit and that the plaintiff had a right to immediate possession, *Huntsville Golf Development, Inc.*, 646 So. 2d at 1336, PennyMac's Complaint alleges that Brown wrongfully took possession of the claim check and insurance proceeds by depositing them into his own account without PennyMac's indorsement, asserted ownership over funds in which PennyMac held a contractual interest as mortgagee and loss payee, and wrongfully detained those proceeds for his own benefit rather than remitting them to PennyMac as the Mortgage required. (Doc. # 1 ¶¶ 13-14, 34). Because the Mortgage entitled PennyMac to the proceeds for use in either repairing the Property or satisfying the loan, PennyMac had the right to immediate possession of the funds. (*Id.* ¶¶ 11, 35). PennyMac has therefore established Brown's liability for conversion.

### 4.    Unjust Enrichment and Money Had and Received

Under Alabama law, unjust enrichment and money had and received are the same cause of action. *AAL USA, Inc. v. Black Hall Aerospace, Inc.*, No. 2:16-CV-02090-KOB, 2018 WL 1157201, at *1 n.1 (N.D. Ala. Mar. 5, 2018) (citing *Dickinson v. Cosmos Broadcasting Co.*, 782 So. 2d 260, 266 (Ala. 2000)). As a result, the court will refer only to unjust enrichment when discussing those claims.

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit; (2) provided by another; and (3) who has a reasonable expectation of compensation." *Portofino Seaport Village, LLC. v. Welch*, 4 So.3d 1095, 1098 (Ala. 2008). "The doctrine of unjust enrichment is an old equitable remedy permitting

the court in equity and good conscience to disallow or to be unjustly enriched at the expense of another." *Battles v. Atchison*, 545 So.2d 814, 815 (Ala. Civ. App. 1989) (citing *Mantiply v. Mantiply*, 951 So.2d 638, 654 (Ala. 2006)).

Applying this standard, PennyMac's Complaint alleges that Brown knowingly accepted and retained the insurance proceeds – funds PennyMac held a contractual right to under the Mortgage – and that PennyMac had a reasonable expectation that those proceeds would be applied to repair the Property or satisfy the loan, consistent with the Mortgage's terms. (Doc. # 1 ¶¶ 11, 40-44). Brown has retained those proceeds since July 27, 2020, without compensating PennyMac. (*Id.* ¶ 43). Equity and good conscience therefore favor recovery, *see Battles*, 545 So. 2d at 815, and PennyMac has established Brown's liability for unjust enrichment.

### 5.    Declaratory Relief

PennyMac also seeks a declaration that it is legally entitled to the insurance proceeds to the extent necessary to either rebuild the Property or pay off the loan. (Doc. # 1 ¶ 46). Because the well-pleaded facts establish that the Mortgage assigned PennyMac an interest in the insurance proceeds and that Brown wrongfully retained those proceeds, PennyMac has likewise established its entitlement to declaratory relief. *See, e.g.*, *Aurora Loan Services, LLC v. Paretas*, No. 808-CV-2590-T33-EAJ, 2010 WL 1417621, at *2 (M.D. Fla. Apr. 8, 2010).

Having found that Brown is liable on each of PennyMac's claims against him, the court turns to the damages PennyMac seeks.

### B.    Damages

Even when a defendant has defaulted, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777

F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). Once liability is established and upon a plaintiff's request including an affidavit showing the amount due, a final judgment may be entered by the court without a hearing if the claim "is for a sum certain or a sum that can be made by computation." Fed. R. Civ. P. 55(b)(1); *see U.S. Artist Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). "[A] plaintiff seeking default judgment must show the [c]ourt what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010).

Here, PennyMac's damages were determined in the adversary proceeding arising from Brown's bankruptcy. The bankruptcy court found that the amount required to pay off the loan was $203,000, awarded PennyMac an additional $14,000 in attorney fees incurred in the adversary proceeding, and entered a judgment making the entire $217,000 debt non-dischargeable. (Doc. # 54-1, Exs. 1-2). These figures are consistent with the allegations contained in PennyMac's Complaint, which alleged that the insurance proceeds (had they been properly turned over to PennyMac as contractually required) would have been applied to and been sufficient to pay off the loan. (Doc. # 1 at 2-9). PennyMac has adequately supported its damages by providing the Declaration of Daron L. Janis and the bankruptcy court's findings, showing that the damages sought are "for a sum certain or a sum that can be made by computation." Fed. R. Civ. P. 55(b)(1). Accordingly, PennyMac is entitled to $217,000 in damages as established by the bankruptcy court.

### C.    Attorney Fees

PennyMac requests $20,960 in attorney fees incurred in litigating this matter against Brown through May 22, 2026. (Doc. # 54-1 ¶¶ 11-17, Ex. 3). The requested fees exclude work related to Brown's bankruptcy proceedings, as well as fees incurred in litigating against and settling with

Defendants Synovus Bank and USAA Federal Savings Bank. The fees were incurred by PennyMac's primary counsel, Troutman Pepper Locke LLP, and local counsel, Clark May Price Lawley Duncan & Paul, LLC. In addition, the court excluded fees incurred between July 9, 2024, when Brown filed his bankruptcy petition, and December 17, 2025, the day before the adversary proceeding was decided. During that period, counsel's work was devoted either to pursuing claims against the other defendants or to the bankruptcy and adversary proceedings themselves. The latter category of fees is already accounted for in the adversary proceeding judgment, so including them here would result in a double recovery.

As explained in PennyMac's Complaint, the Mortgage provides that, if Brown fails to perform the covenants and agreements contained therein, PennyMac may recover reasonable attorney fees incurred to protect its interest in the property and enforce its rights under the Mortgage, and that such amounts become additional debt secured by the Mortgage. (Doc. # 1 ¶ 20).

An award of attorney fees must be based on the lodestar method, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In determining the lodestar, the court must first determine a reasonable hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). The fee applicant bears the burden of producing satisfactory evidence that the requested rates are consistent with prevailing market rates. *Id.* Although such evidence generally must consist of more than counsel's own affidavit, the court

9

may also rely on its own expertise and independent judgment in assessing the value of legal services. *Norman*, 836 F.2d at 1303.

The court has reviewed the billing records submitted as Exhibit 3 to the Janis Declaration and finds the hourly rates charged to be reasonable. (Doc. # 54-1 Ex. 3). The relevant legal community for purposes of the lodestar analysis is the Northern District of Alabama, where this action was filed. The billing records reflect work performed by attorneys and staff at two firms. At Troutman Pepper Locke LLP, the primary timekeepers were Daron Janis and Thomas Yoxall. Their hourly rates ranged from $330 and $530 per hour, respectively, in 2023 and increased to $645 and $680 per hour by early 2026 because of standard annual rate adjustments. The records also reflect limited involvement by Steve Humeniuk, who billed at $645 per hour on post-bankruptcy collection strategy issues. At Clark May Price, lead attorney Bryan Paul billed at $350 per hour throughout the engagement, while associate and paralegal timekeepers billed at $225 and $150 per hour, respectively. These rates are consistent with those customarily charged by experienced consumer finance litigators and local counsel practicing in this district and are therefore reasonable.

The court must also determine whether the hours expended were reasonable. The Supreme Court has emphasized that fee applicants must exercise "billing judgment" and exclude excessive, redundant, or otherwise unnecessary time. *Hensley*, 461 U.S. at 434. Billable hours include work that would be paid for by a reasonable client intent on vindicating its rights. *Perkins v. Mobile Hous. Auth.*, 847 F.2d 735, 738 (11th Cir. 1988). Where billing judgment has not been exercised, courts are obligated to reduce excessive or unnecessary hours. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

The billing records reflect that Janis and Yoxall billed 38.9 and 21.2 hours, respectively, while Humeniuk billed 1.3 hours, for a combined total of 61.4 hours for Troutman Pepper Locke lawyers. At Clark May Price, Paul billed 21.7 hours, and timekeepers Lenard, Douglas, and Reeves billed 14.2, 13.7, and 0.3 hours, respectively, for a combined total of 49.9 hours. Together, the two firms billed 111.3 hours for just over two years of litigation.

The court has reviewed the billing records and finds the requested hours to be reasonable considering the complexity of the issues presented, the duration of the litigation, and the court's familiarity with fee awards in similar cases. *See, e.g.*, *Careminders Home Care, Inc. v. JPE Home Care, LLC*, No. 1:14-CV-03147-ELR, 2016 WL 3128561, at *5 (N.D. Ga. Mar. 2, 2016) (awarding $19,832.00 in attorney fees for 63.8 hours); *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1316 (N.D. Ga. 2017) (awarding $34,965.50 in attorney fees for 180 hours). The time entries are detailed and reflect substantive work performed at each stage of the case. The court is also satisfied that counsel exercised appropriate billing judgment by excluding fees attributable to the bankruptcy proceedings, the adversary proceeding, and the claims against Synovus and USAA.

Accordingly, the court concludes that the requested attorney fee award of $20,960 for 111.3 hours is reasonable and shall be awarded.

### D.      Post-Judgment Interest and Costs

PennyMac is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961, which provides that interest shall be allowed on money judgments in civil cases. Post-judgment interest shall accrue from the date of entry of judgment at the applicable statutory rate.

PennyMac is further entitled to recover its court costs in the amount of $405, representing the filing fee paid to initiate this action.

## IV.    Conclusion

For the reasons explained above, PennyMac's Motion for Default Judgment (Doc. # 54) is due to be granted. A separate judgment consistent with this memorandum opinion and order will be entered.

**DONE** and **ORDERED** this June 22, 2026.

_____
**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE